## COMMONWEALTH *vs.* OWEN FLANNELLY.

The *St.* of 1856, *c.* 222, which prohibits the sale of adulterated milk, knowing or having reason to believe it to be adulterated, is not repealed by the *St.* of 1859, *c.* 206.

A complaint on *St.* 1856, *c.* 222, for selling adulterated milk, cannot be sustained without allegation and proof that the defendant knew, or had reason to believe, that the milk was adulterated.

A complaint on *St.* 1859, *c.* 206, § 4, for selling adulterated milk, must allege that the defendant was engaged in the business of selling milk.

COMPLAINT to the police court of Boston, alleging that the defendant on the 23d of November 1859 at Boston " did sell and deliver to one William J. Wilson one pint of milk, and received in payment therefor the sum of three cents, and that the said pint of milk so sold as aforesaid was adulterated with water, the said Flannelly then and there having reason to believe the said milk to be so adulterated; against the peace of said Commonwealth, and the form of the statute in such case made and provided."

For the purposes of the trial in the superior court in Suffolk, it was admitted that the milk was in fact adulterated; but that the defendant sold it, not knowing that it was adulterated; and *Putnam,* J. ruled that the Commonwealth was not bound to prove such knowledge. The defendant, being convicted, moved in arrest of judgment, and, that motion being overruled, alleged exceptions.

*N. Richardson & S. Snow*, for the defendant.

*S. H. Phillips*, (Attorney General,) for the Commonwealth.

BIGELOW, J. The law does not favor a repeal of a statute by implication. If there are no words of repeal, a subsequent statute will not be held to abrogate a former one on the same subject, if by a fair and reasonable construction both can stand together. It is only where the later statute covers the whole ground of a former statute, or the provisions of the two are repugnant to or inconsistent with each other, that it will be held that the more recent enactment repeals the earlier one upon the same subject matter.

Applying the familiar rule of interpretation to the two statutes

enacted for the purpose of preventing and punishing the sale of adulterated milk in this commonwealth, it is very clear that the *St.* of 1856, *c.* 222, is not repealed by the *St.* of 1859, *c.* 206. There are no words of repeal in the latter statute, and we think its provisions are not only consistent with those of the former statute, but were intended by the legislature to reach much further, and to provide a more stringent rule in certain cases than was contemplated by the previous act, leaving the latter to operate in those cases which are not included in the subsequent statute. By *St.* 1856, *c.* 222, any person who shall sell adulterated milk, knowing or having reason to believe the same to be adulterated, is liable to the penalty therein provided. This act was made applicable to all persons alike who should offend against its provisions, and the *scienter* or guilty knowledge or belief was made, in express terms, an essential ingredient in the offence. But the *St.* of 1859, *c.* 206, was not intended to have a general application, but only to extend to those who were engaged in the trade or business or calling of selling milk, either exclusively or as a part or branch of their regular occupation. All its provisions are manifestly framed with this design. The first section empowers the inspectors of milk, whose duty it is to prosecute violations of law, to enter " all places where milk is stored or kept for sale ; " the second section requires the inspectors to keep an office and books for the purpose of recording the " names and places of business of all persons engaged in the sale of milk " within their limits, and requires any one who shall presume " to engage in the business of selling of milk " to cause his name to be registered, under a heavy penalty ; the fourth section requires " all persons engaged in the sale of milk " to cause the vessels used by them in the sale or purchase of milk to be sealed; and then provides that any person who shall fail to cause his measures to be sealed, or shall sell unwholesome or adulterated milk, shall be subject to the penalty therein prescribed. All these provisions apply only to those persons who are engaged in the sale of milk as a business or calling, or as a part of their regular occupation or trade. For this reason, doubtless, the clause inserted in *St.* 1856, *c.* 202, requiring proof

that the seller knew or had reason to believe the milk to be adulterated, was studiously omitted in the later statute. The legislature, knowing the difficulty of proving the guilty knowledge or belief of adulteration, intended to hold those who were engaged in the sale of milk as a business or trade to a stricter rule, and to impose on them the duty of ascertaining the purity of the article which they offered for sale. In this view the two statutes are perfectly consistent, and may well stand together; the former being applicable to those who shall sell adulterated milk, knowing or having reason to believe it to be impure; while the latter applies only to those who, being engaged in the business of selling milk, shall carelessly, negligently or ignorantly sell an adulterated article.

It follows that the complaint in the present case was valid and well charged an offence under *St.* 1856, *c.* 222; and the motion in arrest of judgment must be overruled.

But the defendant was wrongly convicted. There was no evidence that he knew or had reason to believe that the milk sold by him was adulterated. This proof was essential to support the charge laid in the complaint, which is a violation of *St.* 1856, *c.* 222. It does not allege a violation of *St.* 1859, *c.* 206, § 4, because it contains no averment that he was engaged in the business of selling milk. This is an essential allegation in order to charge an offence under the last named statute, and to enable the government to dispense with all proof of guilty knowledge or belief. *Exceptions sustained.*